UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VICKI C. ROBIE,

                          Plaintiff,

      v.

THOMAS OBST, Ph.D., CRNA,
Clinical Professor and CRNA Program Director, Individually,

MICHAEL R. LAMPARELLI, MS, CRNA,
Clinical Assistant Professor/Clinical Residency
Coordinator, Individually,

JEAN BROWN, Ph.D., RN, FAAN, Individually,

NANCY CAMPBELL-HEIDER, Ph.D., RN
Graduate Department Chair, Individually,

KATHY LUCKE, Ph.D., RN, Associate Dean for
Academic Affairs, Individually,

BRENDA KAHN, MS, CRNA, Individually,

                          Defendants.

**DECISION AND ORDER**
14-CV-57S

## I. INTRODUCTION

In this action, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for Defendants' alleged violations of her First and Fourteenth Amendment rights under the United States Constitution. Presently before this Court is Defendants' Motion to Dismiss Plaintiff's complaint as untimely and for failing to state a claim, pursuant to Rules 8(c) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 18). For the following reasons, Defendants' motion is granted.

1

## II. BACKGROUND

**A. Facts**

This Court assumes the truth of the following factual allegations alleged in Plaintiff's complaint in adjudicating Defendants' joint Motion to Dismiss. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff, Vicki C. Robie, started her graduate studies at the State University of New York at Buffalo ("UB") in the Graduate School of Nursing's Certified Nurse Anesthetist Program ("CRNA Program") in the fall of 2007. (Complaint, ¶ 28).

In the spring of 2009, Robie was informed that she failed a course designated as NUR546 and was placed on academic probation. (Complaint, ¶¶39-40). Robie signed an academic probation contract on June 1, 2009. (Complaint, ¶41). The probation contract required that Robie "repeat NUR546, achieve a grade of B or better in all remaining courses, . . . register for an additional clinical course, extend her expected date of graduation from December of 2009 to May 2010, and complete all clinical and course requirements by Spring 2010." (Complaint, ¶42).

In the fall of 2009, Robie reported her observations of chronic student cheating on exams in NUR547 to that course's professor, who in turn reported Robie's allegations to Defendant Thomas Obst. (Complaint, ¶¶44-48.) At that time, Robie was also enrolled in NUR605, which "required completion of three clinical rotations at three different facilities." (Complaint, ¶49). By early January 2010, despite receiving positive

feedback and satisfactory anecdotals, Robie had received a failing grade in NUR605 and was thereafter dismissed from the CRNA Program. (Complaint, ¶105).

Robie subsequently filed a Petition for Reinstatement to the Graduate Nursing School's MS/DNP Committee ("the Committee"). (Complaint, ¶110). Defendant Michael R. Lamparelli was a member of the committee and Defendant Thomas Obst was also present and participated. (Complaint, ¶¶111-12). At the committee meeting (which Robie was not allowed to attend), Obst argued against Robie's reinstatement. (Complaint, ¶113). The Committee ultimately denied reinstatement and sent Robie a formal dismissal notice on or about January 8, 2010. (Complaint, ¶¶115-17.)

After dismissal, Robie pursued all other remedies and appeals UB policy would allow, including submitting six grievances to the Graduate Nursing School on April 22, 2010. (Complaint, ¶¶118-19).  In response, UB formed a Departmental Grievance Committee, which held a one week hearing beginning on September 14, 2010. (Complaint, ¶¶120-21). The Grievance Committee subsequently recommended that Robie be reinstated. (Complaint, ¶125). Despite this recommendation, Defendant Nancy Campbell-Heider, the chair of the Graduate Department and Director of the MS/DNP CRNA Program, upheld Robie's dismissal on October 18, 2010. (Complaint, ¶126).

Robie spent several weeks trying to obtain a copy of the Departmental Grievance Committee's report to include in her Decanal Appeal.[1] (Complaint, ¶128). Campbell-Heider initially refused to disclose the report, but did so after Robie presented her with the relevant portions of UB's policies, procedures and guidelines that required disclosure. (Complaint, ¶129).

---

[1] A Decanal Appeal is a college level appeal of a departmental hearing decision. (Docket No. 24, Exhibit A at 32).

Defendant Kathy Lucke presided over the Decanal Hearing. She would not permit Robie to discuss evidence and testimony that was previously presented at the Departmental Hearing, which Robie asserts was a violation of UB's official grievance policies and procedures. (Complaint, ¶¶132, 135). In contrast, Lucke permitted Obst to read clinical evaluation narratives and present new evidence that was not previously provided to Robie, which Robie contends violated the graduate school grievance rules and procedures. (Complaint, ¶¶136-37).

On February 4, 2011, Defendant Jean Brown, the Dean of the Graduate Nursing School, notified Robie that she was upholding her dismissal. (Complaint, ¶140). Robie filed a final appeal at the Graduate School level on February 21, 2011. (Complaint, ¶141). She later received notice that the appeal had been denied on March 15, 2011. (Complaint, ¶142).

## III. DISCUSSION

Plaintiff raises two claims pursuant to 42 U.S.C. § 1983.  This section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Notably, § 1983 does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  Here, Robie first contends that she had a protected property

interest in her graduate level degree, and Defendants violated her Fourteenth Amendment rights by denying her the ability to obtain that degree without sufficient due process. Second, Robie contends Defendants violated her First Amendment rights by dismissing her from the CRNA program in retaliation for her repeated vocalizations regarding chronic cheating among students in the program. Defendants now move to dismiss the Complaint on the grounds that: (1) Robie's Claims are barred by the applicable statute of limitations; and (2) alternatively, fail to state a claim for which relief can be granted.

## A.      Statute of Limitations

Under Rule 8(c)(1) of the Federal Rules of Civil Procedure, a defendant may assert the relevant statute of limitations as an affirmative defense in a responsive pleading. See F.R.C.P. 8(c)(1). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n. 12 (2d Cir.2014).

For all § 1983 claims, the length of the applicable statute of limitations is governed by state law, and in New York, the three-year period of limitations provided by N.Y.C.P.L.R. § 214(5) applies. See Okure v. Owens, 816 F.2d 45, 46 (2d Cir. 1987), aff'd, 488 U.S. 235 (1989); Yates v. Cunningham, No. 08-CV-6346(MAT), 2013 WL 557237, *2 (W.D.N.Y. Feb. 12, 2013) ("In the context of § 1983 actions, the statute of limitations for such claims is three years."). But federal law, not state, governs the

accrual of a claim, which ordinarily occurs "when the plaintiff knows or has reason to know of the harm," Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009); see Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).

When a plaintiff fails to timely bring a claim, the plaintiff "must establish that he is entitled to have the limitations period tolled" to avoid dismissal. Yates, 2013 WL 557237, *2; see also Jewell v. County of Nassau, 917 F.2d 738, 740 (2d Cir. 1990) (per curiam) (noting the federal courts' "power to toll statutes of limitations borrowed from state law"). Although accrual is governed by federal law, federal courts use state tolling provisions when deciding § 1983 claims because of the close relationship between a state's statute of limitations and its tolling provisions. See Hardin v. Straub, 490 U.S. 536, 538, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989); Jewell, 917 F.2d at 740. New York has codified specific circumstances where the limitations period may be tolled, such as insanity and infancy. See New York Civil Practice Law and Rules ("C.P.L.R.") § 201, et seq. None of those circumstances are present here. Nonetheless, a plaintiff may still toll the statute of limitations by asserting equitable estoppel or equitable tolling, as "[i]t is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law." Meyer v. Frank, 550 F.2d 726, 729 (2d Cir. 1977); see also Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60-61 (2d Cir. 1986) (distinguishing equitable estoppel from equitable tolling).

1.   Plaintiff's First Amendment Claim

The timeliness of Plaintiff's claims depends on when each cause of action accrued.  Plaintiff's second cause of action alleges that Defendants violated her First Amendment rights by terminating her from the nursing program in retaliation for her

speaking out against the chronic cheating she witnessed within the program. (Complaint, ¶¶158-87.)  Accordingly, she had reason to know of the harm giving rise to her claim on January 8, 2010, the day UB formally dismissed her from the nursing program despite the probation contract. (Complaint, ¶117); see Shomo, 579 F.3d at 181. This cause of action therefore accrued more than three years before Plaintiff filed her complaint on January 27, 2014. (Docket No. 1).

Robie relies on her participation in the UB grievance process to support the conclusion that any statute of limitation has been tolled.  However, because the exhaustion of remedies is generally[2] not required prior to bring a § 1983 claim, Plaintiff's First Amendment cause of action is untimely unless it is established that the statute of limitations has been equitably tolled or equitably estopped. See Patsy v. Bd. of Regents, 457 U.S. 496, 500, 516, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) (§1983 claims may be filed immediately upon accrual).

Equitable tolling may be invoked where a plaintiff remains unaware of a cause of action due to a defendant's misleading conduct. Dillman, 784 F. 2d at 60 (2d Cir. 1986). This doctrine is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Baroor v. N.Y.C. Dep't of Educ., 362 Fed. Appx. 157, 159 (2d Cir. 2010) (quoting Zerilli-Edelglass v. N.Y.C. Transit Auth., 33 F.3d 74, 80 (2d Cir. 2003)). Equitable estoppel may be invoked where a plaintiff was aware of his cause of action but was delayed in bringing it

---

[2] The exhaustion of remedies is required for § 1983 claims brought by adult prisoners challenging the conditions of their confinement. See 42 U.S.C. § 1997e (Civil Rights of Institutionalized Persons Act of 1980); Felder v. Casey, 487 U.S. 131, 148-49, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988). The case on which Plaintiff relies for tolling the accrual date of her claims – Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007), a prisoner claim case – is therefore distinguishable.

because of the defendant's conduct. <u>Dillman</u>, 784 F.2d at 60-61. This doctrine is applicable where, for example, "the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." <u>Cerbone v. Int'l Ladies' Garment Workers' Union</u>, 768 F.2d 45, 50 (2d Cir. 1985).

It is Robie's burden to set forth in her complaint facts from which the Court could conclude that she was either unaware of or prevented from pursuing her cause of action because of defendants' misleading conduct. <u>Pietri v. N.Y.S. Office of Court Admin.</u>, 936 F. Supp. 2d 120, 138 (E.D.N.Y. 2013); <u>see also</u> <u>Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.</u>, 607 F. Supp. 2d 324, 328 (D. Conn. 2009) (holding that it is necessary for the plaintiff to allege specific allegations as to the means by which the defendant actively misled or prevented the plaintiff from exercising her rights). Here, there is no allegation that Robie was unaware of her claim, let alone because of Defendants' conduct. As alleged, the facts demonstrate that Plaintiff repeatedly pursued redress at UB, evidencing her awareness of a wrong. Nor does Plaintiff assert that she failed to pursue a § 1983 claim sooner because of Defendants' misleading conduct. Equitable estoppel therefore also does not apply.

2.    <u>Plaintiff's Procedural Due Process Claim</u>

In contrast, procedural due process claims "do require analysis of state remedies because the constitutional violation on which to base a § 1983 claim is not complete until life, liberty, or property is deprived without due process of law." <u>Wilbur v. Harris</u>, 53 F.3d 542, 544  (2d Cir. 1995) (citing <u>Zinermon v. Burch</u>, 494 U.S. 113, 125–26, 110 S.

Ct. 975, 108 L.Ed.2d 100 (1990)).  A procedural due process claim requires a court to consider two questions: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (quoting Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).  Thus, when § 1983 claim alleges a procedural due process violation, the issue of whether state remedies exist is relevant not to an exhaustion requirement, but instead "that inquiry goes to whether a constitutional violation has occurred at all." Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 468 n. 12 (2d Cir. 2006). This is because "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." N.Y. State NOW v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001).  To that end, a "constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon, 494 U.S. at 126.

Further, "in evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by states employees.' " Rivera-Powell, 470 F.3d at 465 (quoting Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996)).  This distinction relates to the timing of the process afforded.  In the former claims, the state is presumed to be in a position to provide a pre-deprivation hearing because of the ability to predict

when a deprivation pursuant to an established state procedure will occur. <u>Rivera-Powell</u>, 470 F.3d at 465.   In contrast, it would be impractical to require pre-deprivation proceedings in the latter claims where a deprivation results from the unpredictable individual acts of state employees. <u>Id</u>.

Here, to the extent, if any, that Robie is alleging that Defendants' actions deprived her of a sufficient *pre-deprivation* process, one to which she was entitled regardless of the sufficiency of any post-deprivation remedies, such a claim would have accrued as of her January 8, 2010 official termination. <u>See</u> <u>Shomo</u>, 579 F.3d at 181.[3] As such, this claim would be time-barred.   No such claim, however, is readily apparent in Robie's complaint, inasmuch as she does not allege that the post-deprivation UB grievance procedures were themselves inadequate.   Indeed, Robie's allegations against Defendants Brown, Campbell-Heider, and Lucke relate solely to their deviation from, and therefore interference with, these post-termination procedures.     Accordingly, Robie's due process claim is not time barred, inasmuch as the multi-step grievance process did not conclude until March 15, 2011 (Complaint, ¶142), less than three years before Plaintiff commenced this action.

---

[3] In any event, a finding that a formal pre-deprivation hearing was required prior to Plaintiff's dismissal from academic probation would appear to be unwarranted.  <u>See</u> <u>Bd. of Curators of Univ. of Missouri v. Horowitz</u>, 435 U.S. 78, 86, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) (noting that "far less stringent procedural requirements" are called for "in the case of academic dismissal"); <u>see generally</u> <u>Ezekwo v. N.Y.C. Health & Hosps. Corp.</u>, 940 F.2d 775, 785 (2d Cir. 1991) (recognizing that the administrator would be justified in immediately removing a resident from a medical program, subject to post-removal review, due to concerns for patient safety), *cert denied*, 502 U.S. 1013 (1991); <u>Ogindo v. DeFleur</u>, No. 07-CV-1322, 2008 WL 5105153, *5 (N.D.N.Y. Oct. 16, 2008) (academic dismissals are not subject to pre-deprivation hearings).

**B.    Motion to Dismiss: Rule 12(b)(6)**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12 (b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiffs' favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).   In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

1.    Procedural Due Process

Defendants argue that Robie's procedural due process claim, to the extent it is found timely, must nonetheless be dismissed because Robie failed to state a sufficient property interest.  Defendants further argue that the multiple-step grievance process comports with the minimum standard of due process, and Robie could have pursued an Article 78 proceeding in state court with respect any alleged deviation from that process.

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.' " Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458,

464 (2d Cir. 2006) (quoting <u>Parratt v. Taylor</u>, 451 U.S. 527, 537, 101 S. Ct. 1908 68 L.

Ed. 2d 420 (1981)).  As noted above, a procedural due process claim is analyzed in two

steps: " 'the first asks whether there exists a liberty or property interest which has been

interfered with by the State; the second examines whether the procedures attendant

upon that deprivation were constitutionally sufficient.' " <u>Valmonte v. Bane</u>, 18 F.3d 992,

998 (2d Cir. 1994) (quoting <u>Kentucky Dep't of Corr. v. Thompson,</u> 490 U.S. 454, 460,

109 S. Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989)).

With respect to the first step, Robie alleges in her Complaint that she has a

protected property interest "in her graduate level degree."[4] (Complaint, ¶145.)   The

Second Circuit has recognized that, under New York state law, an "implied contract"

exists between a college or university and its students that requires "the 'academic

institution [to] act in good faith in its dealing with its students.' " <u>Branum v. Clark</u>, 927

F.2d 698, 705 (2d Cir.1991) (quoting <u>Olsson v. Board of Higher Education</u>, 49 N.Y.2d

408, 414, 402 N.E.2d 1150, 1153 (1980)). "Such an implied contract, recognized under

state law, provides the basis for a property interest that would be entitled to

constitutional protection." Branum, 927 F.2d at 705.  Defendants argue that the instant

case is distinguishable from <u>Branum</u> because of Plaintiff's probationary status. (Defs'

Mem or Law at 12 (citing <u>Finley v. Giacobbe</u>, 79 F.3d 1285, 1297-98 (2d Cir. 1996).)

<u>Finley</u>, however, recognized only that under New York state law a probationary

*employee* had no reasonable expectation of continued employment absent a statute or

---

[4] Robie also alleges in her Complaint that she had a protected property interest in "a professional license."  (Complaint, ¶154.)  However, in their submissions, the parties do not discuss this alleged property interest, and it is unclear whether Robie intended to allege a property interest separate to that related to her completion of the program.  <u>See generally</u> <u>Barsoumian v. Univ. of Buffalo</u>, No. 06-CV-831S, 2013 WL 3821540, *6 (W.D.N.Y. July 23, 2013) (noting that successful graduation from a medical residency program does not automatically result in certification from a third party agency).

contractual provision that precluded the termination of employment without cause. 79 F.3d at 1297-98.  Here, however, Plaintiff's probationary status does not undermine the existence of an implied contract; rather, the probationary agreement specifies the conditions which, if met, would permit her continued enrollment. See Olsson, 49 N.Y.2d at 414 (the implied student-institution contract is that "if [the student] complies with the terms prescribed by the [institution], he will obtain the degree which he sought").  Robie has sufficiently stated a property interest.

With respect to the second step, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); Monserrate v. N.Y. State Senate, 599 F.3d 148, 158 (2d Cir. 2010). " 'The touchstone of due process, of course, is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.' " Monserrate, 599 F.3d at 158 (quoting Spinelli v. City of N.Y., 579 F.3d 160, 169 (2d Cir. 2009)) (alterations omitted)).  This opportunity to be heard must be given at a " 'meaningful time and in a meaningful manner.' " Adler v. Cnty. of Nassau, 113 F. Supp. 2d 423, 433 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 437, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982)).

As noted above, Robie neither alleges nor argues that the established University grievance procedures were inadequate to afford her sufficient notice and an opportunity to be heard. Instead, she alleges that Defendants Campbell-Heider, Brown, and Lucke acted contrary to these established procedures to arbitrarily affirm her dismissal at the departmental and decanal appeal levels of the grievance procedure. (Complaint, ¶¶118-140, 152.)  Robie's allegations against Defendants Obst, Lamparelli, and Kahn,

however, pertain to conduct prior to and during the Committee meeting that resulted in her January 8, 2010 termination.  Because these Defendants are not alleged to have personally interfered with the post-termination grievance process, the procedural due process claim must be dismissed as against them. See generally Faird v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (the personal involvement of a defendant is a prerequisite to liability under § 1983).

With respect to the remaining Defendants, not every deviation from a contractual grievance procedure, no matter how trivial, constitutes a deprivation of constitutional due process. Barsoumian v. Williams, 29 F. Supp. 3d 303, 314 (W.D.N.Y. 2014), *aff'd* 594 F. App'x 41 (2d Cir. 2015). Alleged deviations that do not affect the fundamental fairness of a hearing do not rise to constitutional proportions. Winnick v. Manning, 460 F.2d 545, 550 (2d Cir. 1972); see Brown v. Western Connecticut State Univ., 204 F. Supp. 2d 355, 366 (D. Conn. 2002) (alleged failure to tape record appeal hearing in violation of Student Handbook did not rise to level of constitutionally deficient process); Turof v. Kibbee, 527 F. Supp. 880, 885 (E.D.N.Y. 1981) (failure to afford informal pre-hearing conference required by college by-laws did not affect fundamental fairness of process where plaintiff nonetheless received a full hearing on the allegations against him).  Here, although Robie alleges numerous failures to abide by the appropriate grievance procedures, particularly with respect to the timing of the presentation of charges and evidence (Compl ¶ 152), it is not clearly alleged in the Complaint that these actions or inactions undermined the fundamental fairness of the proceedings by preventing, as opposed to merely delaying, Plaintiff from receiving notice of the

allegations supporting her dismissal and affording her an opportunity to be heard on them. See Barsoumian, 29 F. Supp. 3d at 314-15.

Moreover, Robie does not allege that any Defendants were involved in or otherwise interfered with her Graduate School Level Appeal, the last step of the UB grievance process. Plaintiff filed this appeal on February 4, 2011, following which her request for readmission into the CRNA program was again denied. (Complaint, ¶¶141-142.)  Notably, the Graduate School Level Appeal exists for the purpose of hearing the claims that Plaintiff now raises: "violations of applicable due process in prior proceedings or which establish sound cause to believe that prior proceedings have resulted in a decision contrary to law, the Polic[ies] of the SUNY Board of Trustees, or policies of the University at Buffalo." (Docket No. 24-2 (University at Buffalo Graduate School Policies and Procedures)); see DiFolco v. MSNCB Cable, 622 F.3d 104, 111 (2d Cir. 2010) (in resolving a motion to dismiss, a court may properly consider those documents attached to or incorporated by reference in the complaint).  Accordingly, the allegations in Plaintiff's complaint establish she was afforded adequate process to challenge her academic dismissal, as well as the alleged improprieties in the post-termination grievance process. See generally Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 86, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) (noting that "far less stringent procedural requirements" are called for "in the case of academic dismissal").

2.    Substantive Due Process

A valid substantive due process claim may be based on evidence of governmental conduct that " 'is so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience.' " <u>Velez v. Levy</u>, 401 F.3d 75, 93 (2d Cir. 2005) (quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). However, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." <u>Velez</u>, 401 F.3d at 94; <u>see</u> <u>Conn v. Gabbert</u>, 526 U.S. 286, 293, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999). Instead the conduct must be considered under the more explicit provision. <u>Conn</u>, 526 U.S. at 293.   Here, Robie's Complaint does not expressly assert a substantive due process claim; therefore, to the extent, if any, one is alleged, such a claim is necessarily premised on the same actions and inactions by Defendants alleged in support of Plaintiff's First Amendment and procedural due process claims. Accordingly, because these separate specific constitutional provisions already govern Robie's allegations, Robie failed to state a separate claim for a violation of substantive due process.  <u>See</u> <u>Barsoumian</u>, 29 F.Supp.3d at 315.


## IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendants are entitled to summary judgment on Robie's § 1983 claims. Her First Amendment claim is barred by the statute of limitations, and the Complaint fails to state a cause of action for a violation of due process. Defendants' motion to dismiss is therefore granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 18) is GRANTED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.


Dated:   July 9, 2015
         Buffalo, New York

/s/William M. Skretny
WILLIAM M.  SKRETNY
United States District Judge

17